**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DON MERCELEANY R. MAXWELL/G-DOFFEE,                                    PLAINTIFF
ADC #108778

v.                                    5:14CV00077-DPM-JTK

SANDRA PEREZ, et al.                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D.P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.        The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Don Maxwell/G-Doffee is a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC).   He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging retaliation, deliberate indifference, and discrimination by Defendants in connection with a fall he suffered in August, 2013, and his medical care and treatment from April, 2013, until February, 2014.  (Doc. No. 2) Defendants Strickland and Chambers are officers at the Maximum Security Unit (ADC Defendants), and Defendants Perez, Stevenson, Boston, Hunter, and Green/McDowell are medical professionals at the Unit (Medical Defendants).[1]  Plaintiff asks for monetary and injunctive relief from the Defendants.

This matter is before the Court on the Summary Judgment Motions, Briefs, and Statements of Facts filed by Defendants (Doc. Nos. 63-68).  Plaintiff filed responses and briefs to the Motions (Doc. Nos. 70-73, 75-76, 78-80), Defendants filed Replies (Doc. Nos. 74, 81), and Plaintiff filed a Response to the Medical Defendants' Reply (Doc. No. 82).

---

[1]Although Plaintiff originally named several John Does as Defendants, he has not identified them and they have not been served. He acknowledged this in his deposition testimony, stating that he had not identified the John Does and would not be naming any more Defendants to his Complaint.  (Doc. No. 66-2, p. 62)

## II.    Complaint

According to his Complaint, Plaintiff was involved in an incident with several officers in April, 2013, which resulted in a back injury.[2] (Doc. No. 2, p. 6) As one of those officers, Defendant Chambers was aware of the injuries Plaintiff suffered. (Id., p. 9) Defendants Chambers and Strickland acted with deliberate indifference to Plaintiff's back injury in August, 2013, when they required him to walk down stairs while cuffed and shackled, let go of Plaintiff, thereby causing him to fall down the stairs and further injure his back. (Id.) Defendants then "snatch[ed]" him off the floor and continued to escort him to the infirmary for a dental check-up. (Id.)  Chambers' actions were in retaliation for a grievance Plaintiff filed against him after the April, 2013 incident. (Id.)

Plaintiff alleges that Defendants Nurses Stevenson and Boston failed to adequately examine him for his complaints of back pain and Defendants Hunter and McDowell (originally identified as Brown) refused to examine and treat him following the August, 2013 fall. (Id., pp. 8-9)  Defendant Perez failed to adequately treat Plaintiff for chest pains in October, 2013, and all the medical Defendants treated Plaintiff less favorably than they treated other inmates from the Pine Bluff or Deep South Arkansas area.  (Id., pp. 10, 13-15)

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[2]The events surrounding the April, 2013, incident are the subject of a separate lawsuit, G-Doffee v. Clark, et al., 5:13CV00291-DPM-JJV (E.D. Ark.)

demonstrate the absence of a genuine issue of material fact.'" <u>Webb v. Lawrence County</u>, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." <u>Id</u>.

**A.    ADC Defendants' Motion**

**1.    Exhaustion**

Defendant Chambers asks to be dismissed, based on Plaintiff's failure to exhaust his administrative remedies by not naming him in a grievance, as required by the ADC grievance procedure, Administrative Directive (AD) 12-16, and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.  In addition, Defendant Strickland asks the Court to dismiss Plaintiff's retaliation claim against him for failure to exhaust.  According to the Declaration of Shelly Byers, Medical Grievance Supervisor for the ADC, both the grievance form and AD 12-16 require inmates to be specific as to the personnel involved, including "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved...."  (Doc. No. 63-2, p.2) Plaintiff filed a grievance about the fall incident, MX-13-01623, but did not specifically name Defendant Strickland in the grievance or the grievance appeal, and did not allege retaliation by Defendant Chambers in the grievance or grievance appeal.  (<u>Id</u>.)  Therefore, Defendants state those claims should be dismissed, because the courts have held that inmates must exhaust all available remedies prior to filing a suit pursuant to § 1983.  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001),

and <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003).

In response, Plaintiff states that the PLRA does not require that all defendants be named in a grievance, and that he was not aware of Strickland's name or identity until he received the grievance response. He also states that Chambers was put on notice of his retaliation claim in "LAYPERSON" terms, and Defendants never notified him that his grievance was incomplete. (Doc. No. 71, pp. 13-14)

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), <u>unconst'l on other grounds</u>, <u>Siggers-El v. Barlow</u>, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In <u>Booth v. Churner</u>, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. at 741. In addition, the United States Court of Appeals for the Eighth Circuit held in <u>Chelette v. Harris</u>, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting <u>Castano v. Nebraska Dep't of Corrections</u>, 201 F.3d 1023, 1025 (8th Cir. 2000)). In <u>Johnson v. Jones</u>, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d at 627 (emphasis in original). Finally, in <u>Jones v. Bock</u>, the United States Supreme Court held that while the PLRA itself does not require that

all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

In <u>Burns v. Eaton</u>, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting <u>Reed-Bey v. Pramstaller</u>, 603 F.3d 322, 325 (6th Cir. 2010)).

In this case, the grievance filed by Plaintiff, MX-13-01623, did not specifically name or refer to Defendant Strickland as involved in the August 5, 2013 incident. (Doc. No. 2, p. 21) However, both the Health Services response and the Assistant Director's response specifically refer to the involvement of both Chambers and Strickland, and their statements about the events surrounding Plaintiff's alleged fall. (<u>Id</u>., pp. 22, 24) The purpose of the prison grievance procedure is to allow for "a proper investigation and response to be completed by ADC." (Doc. No. 63-1, p. 4) It is clear to the Court that even though Plaintiff failed to name Defendant Strickland in the grievance, his involvement was considered by the ADC in investigating Plaintiff's grievance complaint about the incident. In addition, the ADC referred to Strickland's report when rendering a decision on the grievance. Therefore, the Court finds that Strickland should not be dismissed for failure to exhaust.

However, the Court agrees with Chambers that Plaintiff's retaliation claim against him should be dismissed for failure to exhaust. Plaintiff never mentions or alleges retaliation in his grievance, and the issue is never addressed in the ADC responses or in Plaintiff's appeal. Therefore, the Court finds that the retaliation claim should be dismissed.

6

### 2.    Sovereign Immunity

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities are barred by sovereign immunity. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64, 70 (1989); <u>Brown v. Missouri Dep't of Corrections</u>, 353 F.3d 1038, 1041 (8th Cir. 2004).

### 3.    Deliberate Indifference - Qualified Immunity

Defendants also ask the Court to dismiss Plaintiff's deliberate indifference claims against them because he cannot show that they knew of, but deliberately disregarded a serious medical need, and they ask to be protected by qualified immunity. Qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. <u>McClendon v. Story County Sheriff's Office</u>, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).[3] Defendants are entitled to qualified

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Nelson</u>, 583 F.3d at 528 (quoting <u>Pearson v. Callahan</u>, 555 U.S.

immunity only if no reasonable fact finder could answer both questions in the affirmative.  <u>Nelson</u> <u>v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).   However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976).

Plaintiff claims that Defendant Chambers knew of his back issues and that both Chambers and Strickland acted with deliberate indifference when they failed to prevent Plaintiff from falling down stairs while escorting him to the infirmary for teeth cleaning.  Although Defendants both dispute Plaintiff's version of the events, stating that they caught him from falling by grabbing his arms and that he never hit the ground (Doc. Nos. 63-4, 63-5), the Court finds that even accepting Plaintiff's version of the events as true, Plaintiff fails to provide any proof of deliberate indifference by Defendants.   Plaintiff does not allege that they intentionally caused him to fall, that they intentionally violated procedures in escorting him, or that they failed to try and help him up after the fall.  Rather, he claims that Defendants let go of him on the stairs and snatched him off the floor when he fell.  (Doc. No. 2, p. 9) In his deposition testimony, Plaintiff stated that as they were walking down the stairs, Chambers was behind him and failed to catch him when he fell.  (Doc. No. 63-3, p. 77)  Chambers then laughed and grabbed Plaintiff by the cuffs and snatched him off the ground.  (<u>Id</u>.)  He also claims Defendant Strickland hurt him when he helped snatch him up.  (<u>Id</u>., p. 79)  The Court finds that these allegations alone support at most a claim for negligence, and not an Eighth Amendment claim for relief, and that no reasonable fact finder could find that the facts alleged or shown, construed in a light most favorable to Plaintiff, establish the violation of a

at 236).

8

constitutional right.

**B.      Medical Defendants' Motion**

**1.      Deliberate Indifference**

Defendants Perez, Stevenson, Boston, Hunter, and McDowell also ask the Court to dismiss Plaintiff's claims against them for failure to prove that they violated his Constitutional rights.    In support, Defendants rely on Plaintiff's deposition testimony, medical records, and the Affidavit of of Dr. Robert Floss.

a) Deposition (Doc. No. 66-2)

Plaintiff claims that Defendants Boston and Stevenson failed to properly treat him in July, 2013.  (Doc. No. 66-2, pp. 50-52) At that time he was housed on the third tier of his barracks, and walking up and down stairs caused him much back pain.  (Id., p. 51)  He filed a sick call and Boston and Stevenson saw him in a barracks (as opposed to the Infirmary), which was not properly-equipped to treat him.  (Id., p. 52)  He claimed that they could see he was in pain and should have moved him from the third tier or arranged for x-rays.  (Id,)  Although they told him he would be referred to the doctor, he did not see the doctor until September 4, 2013. (Id., p. 53)  If they had examined him properly and arranged for the doctor to see him, Plaintiff stated he would not have fallen on August 5, 2013.  (Id., p. 54)

Plaintiff claims Defendant Hunter failed to properly check him or arrange for x-rays, when he was escorted to the infirmary for dental cleaning on August 5, 2013 (following his fall). (Id., pp. 63, 66) In addition, Defendant McDowell told him that since he was in the infirmary for dental treatment, he would need to file a sick call request for his other medically-related complaints.  (Id., p. 67)  He also asserted that all the medical Defendants treated him less favorably than other inmates from Pine Bluff or the deep South, and that he was from Little Rock and was a lighter shade of

brown, an "American Spalato."  (Id., pp. 56-57)

He further testified that on September 25, 2013, he was taken to the infirmary with chest pains, back spasms, and difficulty breathing, and that Nurse Perez initially did not want to treat him because of his race.  (Id., p. 31)  She then examined him, took his vital signs, but did not give him an EKG test.  (Id., p. 33)  He complained that she erred by finding him in no distress, should have referred him to an ambulance, and that as a result, he suffered a heart attack on October 7, 2013 (Id., p. 36)  He then retracted his statement, stating that he could not medically say that he had a heart attack on that date, but he suffered from symptoms on that date.  (Id., p. 38)  He alleged that on October 7, 2013, he suffered back spasms while laying in his bunk, could not stand up or straighten his legs, and then slid to the floor.  (Id., p. 43)  An officer found him and Perez came to his cell to check on him, but said that because he was black she would not treat him, unless he was from the deep South.  (Id., p. 45)  He admitted she came into his cell, checked him without touching him, and left him a pill, but he did not take it because it was not the type of medication he had taken in the past.  (Id., p. 47)   The next day he saw a doctor.  (Id., p. 49)

b) Medical records (Doc. No. 66-1)

According to the records relevant to his allegations against Defendants, Stevenson treated Plaintiff on April 24, 2013 for leg, back, and chest pains, and provided ibuprofen.  (Doc. No. 66-1, p. 2) He saw Plaintiff again on May 2, 2013, and referred him to a physician for his back pain.  (Id, p. 5)  An x-ray was taken on May 6, 2013, which revealed "normal radiographic appearance of the lumbar spine."  (Id., p. 7) Dr. Schock, a non-party orthopedic physician, saw Plaintiff on May 6, 2013, and prescribed Meloxicam and Methocarbamol. (Id., p. 8)  Dr. Carswell, another non-party physician, saw Plaintiff on May 22, 2013, and prescribed Tylenol and stretching exercises for his back.  (Id., p. 13)  Dr. Carswell saw him again on June 12, 2013, renewed the Tylenol, Meloxicam

10

and Loratadine prescriptions, together with an analgesic balm, and further instructed him on the stretching exercises for his back.  (Id., p. 21)

On July 26, 2013, Defendant Boston saw Plaintiff in the infirmary for complaints of back pain while walking up and down stairs from his cell.  (Id., p. 30)  She noted a normal and steady gait, prescribed Acetaminophen, and instructed him to return in three to four days if he did not feel better.  (Id.)[4]  Pursuant to his request, Plaintiff had his teeth cleaned on August 5, 2013, the date of his fall.  (Id., p. 37)[5]  On August 25, 2013, Plaintiff submitted a sick call request, stating he submitted several sick calls following his August 5, 2013 fall, continued to suffer from back pain, and had not seen a nurse or doctor since July 26, 2013. (Id., p. 41) He was seen by a non-party nurse on August 26, 2013, and referred to a physician.  (Id., p. 42)  On September 4, 2013, Plaintiff was examined by Dr. Carswell, who noted that he moved well, with a range of motion rotation of 70 % and flexion 60% of normal.  (Id., p. 45)  She prescribe Indomethacin, provided a script so he could sit down in the shower, and stated that she would speak with someone about whether Plaintiff could qualify for placement on a bottom tier.  (Id.)  Another x-ray of Plaintiff's back was taken on September 9, 2013, which revealed minimal scoliosis and minimal degenerative change with no significant interval change.  (Id., p. 49)

On September 25, 2013, Plaintiff was examined by Defendant Perez, who noted no injuries or distress, and advised him to submit a sick call if symptoms persisted. (Id., p. 53) Plaintiff voiced no complaints during segregation rounds from September 25, 2013, until October 7, 2013. (Id., pp.

---

[4]Despite Plaintiff's claim to the contrary, the health services encounter for this date includes no reference to a doctor.  (Id., p. 33)

[5]Plaintiff voiced no complaints during segregation rounds conducted on August 10-11, 2013, August 13-18, 2013, August 21-25, 2013, and requested a sick call slip on August 26, 2013.  (Id., pp. 38-40)

53-56)  On October 8, 2013, at 1:32 a.m., Perez was called to Plaintiff's cell after a guard found him laying on the floor.  (Id., p. 57)  When she arrived at the cell, she noted he was alert, laying on his stomach, and moving his feet from side to side. (Id.)  However, when she entered his cell, Plaintiff ceased movement and stiffened, claiming he could not move.  (Id.)  Perez noted no redness or burning, no swelling or signs of injuries, no abnormal bulges or lumps to his lumbosacral area.  (Id.) She treated him for muscle strain, administered a muscle relaxer, and scheduled him to see a doctor the next morning. (Id.)  She advised him to rest the injured area, apply ice or a cold pack every thirty minutes, and take Ibuprofen or Acetaminophen.  (Id.)  Plaintiff saw the doctor the next morning and his medications were renewed.  (Id., p. 58)  Valium was given to relieve his spasms and he was prescribed Flexeril in place of the Methocarbamol.  (Id., pp,. 66-67)  Plaintiff voiced no complaints during segregation rounds from October 10, 2013, through October 24, 2013 (Id., pp. 68-70).  On October 25, 2013, Defendant Boston examined him for complaints of back, hip, and leg pain, and noted steady and even gait, no edema, redness or warmth to the areas, and referred him to the orthopedic physician.  (Id., p. 70)  He again voiced no complaints, from November 1, 2013, through November 19, 2013.  (Id., pp. 71-76)

Plaintiff saw non-party physician Peppers-Davis on November 19, 2013, for medication renewal.  (Id., p. 77)  At that time he stated he was not doing any of the recommended exercises and complained about not timely receiving medications.  (Id.)  The doctor also noted that he did not qualify for a back brace or a lower tier script, and that Plaintiff stated he could walk up one flight of stairs but not two.  (Id.)  Finally, Dr. Peppers-Davis noted that Plaintiff was an "extremely muscular man with no limitations."  (Id.)  Plaintiff saw Dr. Schock on November 22, 2013 (Id., p. 79), and voiced no complaints during segregation rounds through December 25, 2013.  (Id., pp. 82-89)  Defendant Boston saw him on December 27, 2013 for complaints with his throat and speaking,

12

noting no respiratory distress. (Id., p. 89) Plaintiff voiced no complaints during segregation rounds from December 28, 2013, through March 2, 2014. (Id., pp. 90-102)

c) Dr. Floss affidavit (Doc. No. 66-3)

Dr. Robert Floss is the Associate Regional Medical Director for Correct Care Solutions, and formerly was employed as Regional Medical Director for Corizon, Inc., the medical care provider for ADC inmates in 2013. (Doc. No. 66-3) He reviewed Plaintiff's medical records in light of Plaintiff's complaints about his treatment for back, neck and chest pain. (Id.) He stated that during the time period at issue, Plaintiff did not have a job assignment and was regularly prescribed pain medication, muscle relaxers, and medications such as Acetaminophen, Meloxicam, Ibuprofen, Methocarbamol, a topical analgesic balm, Indomethacin, Cyclobenzaprine, a Diazepam injection, Alpha Lipoic Acid, orthopedic size 9 insoles, and a prescription for a seated shower. (Id., p. 2) Two x-rays were taken, which showed no medically-significant deformity, and Plaintiff was examined by an orthopedist on May 6, 2013, and November 22, 2013. (Id.) During the first examination, Dr. Schock assessed Plaintiff as having a sprain of the iliolumbar region of the back, and during the second examination, Plaintiff showed significant improvement in his ability to flex his back. (Id.)

Dr. Floss stated there is no evidence in Plaintiff's medical record to support his claim that he suffered a heart attack. (Id.) He also noted that Plaintiff's complaint about climbing stairs was addressed on September 4, 2013, by Dr. Carswell, and agreed with her determination that his intermittent complaints of pain did not fit the protocol for a bottom tier prescription. (Id., p. 3) He concluded that Plaintiff was appropriately treated by all the Defendants (licensed practical nurses, nursing assistant, and registered nurse) and by the doctors, and noted that nurses and nursing assistants cannot prescribe controlled medications or make diagnoses. (Id.)

Based on this evidence, Defendants state Plaintiff cannot support a deliberate indifference

claim against them, and that he instead disagrees with the course of treatment they provided, which does not support a constitutional claim for relief.  Dulany v. Carnahan, 132 F.3d at 1240.

In response, Plaintiff states that Defendants denied and intentionally delayed his medical treatment, and that although they are nurses, they were responsible as first responders for referring him to doctors for appropriate treatment.  He claims Defendants Stevenson and Boston told him they would refer him to the doctor when they saw him in July, 2013, and that their failure to do so resulted in his fall on August 5, 2013.  He also claims Defendants Hunter and McDowell denied him medical care and treatment following his fall, requiring him to submit a separate sick call to be seen for his alleged injuries.  Finally, he claims a sufficient dispute of fact exists over whether Defendant Perez provided appropriate treatment to him on September 25, 2013, and October 8, 2013, knowing of his history of irregular heartbeats and back spasms.

As noted above, to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. at 834.  The "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).  Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."  Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).  An inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay,

in order to succeed on his claim.  <u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds).  And finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  <u>Dulany</u>, 132 F.3d at 1240.

Having reviewed all the evidence presented by the parties, the Court finds that Plaintiff provides no medical or other evidence to contradict his medical records, which show that Defendants and the other medical providers provided him consistent adequate treatment for his neck, back, and chest pains.  Most of Plaintiff's complaints are disagreements over the type of medical treatment Defendants provided, which does not rise to the level of a constitutional claim.  See <u>Long</u>, 86 F.3d at 765.  And he fails to provide any evidence that any of the Defendants acted with deliberate indifference to his serious medical needs, or to a serious risk of harm.  The records show that medical personnel checked on him nearly every day while he was housed in administrative segregation, and that he was seen by doctors often for his back pain complaints, provided numerous medications, and given x-rays.  Therefore, the Court finds he does not meet his burden of producing any evidence to contradict the abundance of evidence of treatment, and that "in the face of medical records...he cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  <u>Dulany</u>, 132 F.3d at 1240.

2)   **Discrimination**

Plaintiff alleges in his Complaint that the medical Defendants treated him less favorably "due

to plaintiff color of skin, &/or plaintiff being from Little Rock & not Deep South Arkansas areas;..." (Doc. No. 2, p. 6)  He also states in his responses to Defendants' Motions that Defendants Hunter

and McDowell failed to treat him the same as dark-skinned inmates, and that Defendant Perez treated him less favorably and made several comments about his race. He testified in his deposition that while he is dark-skinned, he is an "American Spalato," as opposed to African-American, and that Defendants discriminated against him based on his shade of brown.  (Doc. No. 63-3, pp. 56-58)

While prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from "'invidious discrimination based on race,'" a claim of racial discrimination "requires a showing of discriminatory intent or purposeful discrimination." Brown v. Arkansas Department of Correction, No. 5:10CV00326-DPM-BD, 2010 WL 5625762 (E.D.Ark.) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Plaintiff must show that he was treated differently than other similarly-situated inmates, and that the treatment was not rationally related to a legitimate penal interest.  Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998); Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).  In this particular case, however, Plaintiff does not specifically identify any inmates who were treated more favorably than he was, and he does not explain how any of the inmates were similarly-situated to him.  In addition, even assuming as true Plaintiff's allegations that Defendants commented negatively about his race or the shade of his skin, he cannot show that Defendants failed to medically treat him.  According to his medical records, he voiced no medical complaints to nurses who daily visited him during segregation rounds between August 6, 2013 (the day following his fall) and the filing of a sick call on August 25, 2013. (Doc. No. 66-1, pp. 35-41) In response to that sick call, he was seen by a medical professional on August 26, 2013, and referred to a physician, who saw him on September 4, 2013 (Id., pp. 42-45) Defendant Perez visited him in pre lock-up on September 25, 2013, noting no injuries or distress, with a note to place a sick call if symptoms persisted.  (Id., p.53) Plaintiff voiced no additional complaints until he was found on the floor of his cell on October 7, 2013, at which time he was treated by Defendant

Perez and provided medication. (Id., pp. 54-57)   Therefore, absent specific allegations and/or evidence that identified inmates similarly situated to Plaintiff were treated differently from him, the Court finds that his discrimination allegation should be dismissed.

**IV.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1.      The ADC Defendants' Motion for Summary Judgment (Doc. No. 63) be GRANTED.

2.      The Medical Defendants' Motion for Summary Judgment (Doc. No. 66) be GRANTED.

3.      Plaintiff's retaliation claim against Defendant Chambers be DISMISSED without prejudice, for failure to exhaust.

4.      All other claims against Defendants be DISMISSED with prejudice.

5.      Defendants John Does be DISMISSED without prejudice, for failure to serve.

IT IS SO RECOMMENDED this 17th day of April, 2015.

_____
     JEROME T. KEARNEY
     UNITED STATES MAGISTRATE JUDGE